**Clifford SIMPSON, Plaintiff,**

v.

**Hillard T. McVEY, Defendant.**
**Civ. No. 5961.**

United States District Court
S. D. Ohio, E. D.
April 30, 1963.

Shoaff, Keegan & Baird, Ft. Wayne, Ind., Warren A. Smith, Columbus, Ohio, for plaintiff.

Joseph P. Kinneary, U. S. Atty., Robert A. Bell, Asst. U. S. Atty., Columbus, Ohio, for defendant.

WEINMAN, Chief Judge.

A brief review of the facts preceding the trial of this matter on January 21, 1963, is as follows: On October 27, 1960, plaintiff filed a petition in the Court of Common Pleas, Franklin County, Ohio, to recover damages from defendant who allegedly "falsely, maliciously, and without reasonable or probable cause" caused the plaintiff to be arrested and incarcerated by the United States of America. On November 2, 1960, the defendant filed a petition for removal, after which plaintiff, on November 18, 1960, moved the Court to remand the action. Defendant filed his answer on November 30, 1960. On January 23, 1961, the Court entered an order which held the motion to remand in abeyance until the time of trial. On February 10, 1961, plaintiff filed a motion for a trial by jury. That motion was overruled by an order dated April 14, 1961. And on January 18, 1963, the defendant moved to dismiss the complaint for the reason that it does not state a cause of action.

On January 21, 1963, before the commencement of trial, the Court took the plaintiff's motion to remand under advisement; it is now overruled. See Conclusion of Law No. 1.

This matter has been tried to the Court without a jury. The Court having considered the pleadings, the evidence and the behavior of the witnesses on the stand, their manner of testifying and the reasonableness and the probability of their testimony, hereby makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On March 14, 1960, the defendant, Hillard T. McVey, was a Deputy United States Marshal, stationed at Columbus, in the office of the United States Marshal for the Southern District of Ohio.

2. On the aforesaid date, defendant received a summons and a copy of the complaint in Civil Action No. 5783, captioned United States of America v. Clifford Simpson, from the Clerk of the United States District Court, Southern District of Ohio, Eastern Division, to be served on Clifford Simpson.

3. Defendant proceeded to plaintiff's farm, parked his car on the highway in front of the farm, walked to the house and knocked on the door. A woman appeared from a barn and informed defendant that Clifford Simpson would be there in a moment.

4. Shortly thereafter, a tractor pulling a wagon came around a building. A farm hand, Alva Snyder, got off the wagon and went behind a building. The driver of the tractor, Clifford Simpson, then proceeded and brought the tractor to a stop approximately five feet from defendant.

5. Defendant asked the driver of the tractor whether he was Clifford Simpson; the response was "Maybe, who are you?"

6. Defendant identified himself as a Deputy United States Marshal. Clifford

Simpson then alighted from the tractor and took a corn cutter from a place on the tractor. A corn cutter is a knife, approximately 20 inches in length, with a rounded blade.

7. Defendant then extended his arm to serve the papers upon plaintiff. Then plaintiff, while shouting curses against the wheat quota program of the United States Government, knocked the papers from defendant's hand with the corn knife. There was, however, no attempt by plaintiff to injure defendant and defendant was not at any time placed in fear of physical harm.

8. Defendant then showed plaintiff his Deputy United States Marshal badge and advised plaintiff that the summons and complaint concerned the wheat quota program.

9. Defendant was ordered off the premises by plaintiff, and he left.

10. Upon returning to his office in Columbus, defendant reported the incident to his immediate superior, Ralph Quellette, a Deputy United States Marshal in charge of the Columbus office, who reported the incident to the United States Attorney.

11. Defendant thereafter gave a written statement of the incident to Howard W. Amos, Special Agent, Federal Bureau of Investigation. Mr. Hugh K. Martin, the United States Attorney for the Southern District of Ohio, authorized the filing of a complaint charging plaintiff with violation of Title 18 U.S.C.A. § 111, opposing and impeding a United States Deputy Marshal in his duties of serving a summons.

12. Special Agent Howard W. Amos then exercised his own independent judgment and decided to sign the complaint and caused it to be filed before Robert W. Newlon, United States Commissioner. A warrant for the arrest of Clifford Simpson was issued on March 15, 1960, and he was on that day arrested at his home and taken, under detention of three agents of the Federal Bureau of Investigation, to the Federal Building in Columbus, Ohio. He was then questioned, finger-printed, photographed and incarcerated.

13. Shortly after his incarceration, plaintiff was taken before Robert W. Newlon, United States Commissioner, for a preliminary hearing. He was fully advised of his constitutional rights, waived his right to counsel and elected to proceed with the hearing. At the conclusion of the hearing, the United States Commissioner, exercising his own independent judgment, found probable cause that plaintiff had violated Title 18 U.S.C.A. § 111 and admitted plaintiff to $2,000.00 bond.

14. The matter was presented to the Grand Jury but they passed the case, i. e., they did not act upon it.

15. Subsequently, the United States Attorney moved that the complaint filed against plaintiff be dismissed and on April 28, 1960, the United States District Court signed an order to that effect.

16. Defendant was, at all times complained of by plaintiff, acting within the scope of his employment as a Deputy United States Marshal.

17. The act of the plaintiff in reaching for a corn cutter knife of the size indicated as admitted by plaintiff in the presence of the Deputy United States Marshal while lawfully serving or attempting to serve legal papers upon the plaintiff is an aggressive and improper act.

18. Plaintiff has failed to prove by a preponderance of the evidence the allegations contained in his petition.

### CONCLUSIONS OF LAW

1. The removal of this case from the Common Pleas Court of Franklin County to this Court pursuant to Title 28 U.S.C.A. § 1442(a) was proper and this Court has jurisdiction of the parties and the subject matter of this action. In Poss v. Lieberman, 299 F.2d 358, 359 (2nd Cir. 1962), cert. denied, 370 U.S. 944, 82 S.Ct. 1585, 8 L.Ed.2d 810 (1962) the Court stated:

"* * * The removal is based on a federal interest in the matter, the

facts underlying which may be stated in the removal petition *itself*, whether or not federal jurisdiction existed over the claim as stated in the complaint as originally served. Where a federal officer asserts a privilege for acts done under color of his office the defense is based upon a federal right, the purpose of which is to prevent federal employees from being unduly harassed by 'vindictive or ill founded damage suits brought on account of action taken in the exercise of their official responsibilities.' Barr v. Matteo, 360 U.S. 564–565, 79 S.Ct. 1335, 1336, 3 L.Ed.2d 1434. Consequently, the federal government has a special interest in such matters which justifies the granting of removal jurisdiction to the federal courts in such cases. * * * "

To the same effect see Allman v. Hanley, 302 F.2d 559 (5th Cir. 1962) and see Revisor's Note to Title 28 U.S.C.A. § 1442.

■■ 2. The Court has found that defendant was acting within the scope of his employment, Finding of Fact No. 16. In Cooper v. O'Connor, 99 F.2d 135, 69 App.D.C. 100, 139 (1938) the Court of Appeals for the District of Columbia stated:

"It is not necessary—in order that acts may be done within the scope of official authority—that they should be prescribed by statute * * *; or even that they should be specifically directed or requested by a superior officer. * * * It is sufficient if they are done by an officer *'in relation* to matters committed by law to his control or supervision.' [Italics supplied] * * *; or that they have *'more or less connection with* the general matters committed by law to his control or supervision.' [Italics supplied] * * *; or that they are governed by a lawful requirement of the department under whose authority the officer is acting." [Citations omitted]. [Footnotes omitted].

3. A Deputy United States Marshal is not liable for acts committed within the scope of his authority. Allen v. United States, 81 U.S.App.D.C. 53, 154 F.2d 329 (D.C. Cir. 1946); Laughlin v. Garnett, 78 U.S.App.D.C. 194, 138 F.2d 931 (D.C. Cir. 1943), cert. denied, 322 U.S. 738, 64 S.Ct. 1055, 88 L.Ed. 1572 (1944); Phelps v. Dawson, 97 F.2d 339· (8th Cir. 1938) and Cooper v. O'Connor, supra.

4. In Gregoire v. Biddle, 177 F.2d 579, 581 (2nd Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950), the Court of Appeals for the Second Circuit considered the questions of scope of authority and the immunity of officials. The following language by Judge Learned Hand, speaking for the Court, was quoted with approval by the Supreme Court in Barr v. Matteo, 360 U.S. 564, 571–572, 79 S.Ct. 1335, 1339, 1340, 3 L.Ed.2d 1434 (1959):

"It does indeed *go without saying* that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable *danger of its outcome, would* dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury

of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. * * *

"The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him. * * *"

5. Plaintiff, having failed to prove the allegations of his complaint by a preponderance of the evidence, is not entitled to recover against defendant.

### JUDGMENT

It is therefore ORDERED that the complaint be and it hereby is DISMISSED and that judgment be and it hereby is entered in favor of defendant, Hillard T. McVey.

The Clerk shall enter judgment as herein provided, no entry of counsel required.